**Nancy WOOLRIDGE, f/k/a Nancy Schmid, Plaintiff, Appellee and Cross–Appellant**

v.

**Michael SCHMID, Defendant, Appellant and Cross–Appellee.**

Civ. No. 920211.

Supreme Court of North Dakota.

Jan. 22, 1993.

Monty G. Mertz (argued), Mertz Law Office, Fargo, for plaintiff, appellee, and cross-appellant.

Bruce L. Madlom (argued), Fargo, for defendant, appellant, and cross-appellee.

RALPH J. ERICKSTAD, Surrogate Judge.[1]

Michael Schmid appeals from an amended divorce judgment which increased his child support obligation and ordered that he reimburse Nancy Woolridge $3,595 for health care costs provided for the couple's children. Nancy cross-appeals from a part of the judgment allowing Michael certain holiday visitation privileges. We affirm.

Michael and Nancy, who lived on a farm near Carrington, were divorced in August 1985. Nancy was awarded custody of their children, Lea, born February 14, 1982, and Patrick, born August 3, 1979. Michael was granted "reasonable visitation" and was ordered to pay "child support in the amount of $25 per child per month for a total of $50 per month."[2] The judgment also ordered Michael to "provide medical insurance for the minor children should they no longer be covered by Medical Assistance."

Nancy and the children received medical assistance benefits until December 1986, when she married Michael Woolridge [Woolridge], who is employed by Burlington Northern Railroad [Burlington]. Lea and Patrick then received health insurance coverage through Woolridge's Burlington family plan. Burlington subsequently transferred Woolridge to work in Havre, Montana, and he, Nancy, and the children currently reside in Chinook, Montana.

Michael also remarried and continues to farm near Carrington. Michael's wife, Danette, is a full-time student who commutes to Jamestown for her college courses. Michael provided health care coverage for Patrick during a one-year period when Patrick lived with Michael and Danette in Carrington pursuant to a mutual agreement of the parties. Otherwise, Michael has not provided health insurance for the children as ordered by the divorce judgment.

Prompted by Woolridge's transfer, Nancy made a motion in August 1991 to change the residence of the children to Montana. Michael responded with a motion seeking joint legal custody of the children. Nancy then moved to increase Michael's child support obligation in accordance with the North Dakota Child Support Guidelines, to enforce the provision of the divorce judgment ordering Michael to provide medical insurance coverage for the children, and to require Michael to reimburse her "for the medical insurance premiums and costs she has incurred due to [Michael's] failure to pay the same."

The motions were heard by a judicial referee. The referee granted Nancy's motion to change the children's residence; denied Michael's motion for joint legal custody of the children; determined that Michael's child support obligation under the guidelines was $469 per month;[3] ordered

---

1. Surrogate Judge Ralph J. Erickstad was Chief Justice at the time this case was heard and serves as surrogate judge for this case pursuant to Section 27–17–03, N.D.C.C.

2. The district court subsequently approved a stipulation of the parties raising Michael's total child support obligation to $100 per month effective November 1, 1988.

3. The referee did not make a specific finding that there was a material change of circumstances warranting modification of Michael's child support obligation. A majority of this court has ruled that there must be a showing that the circumstances of the parties have materially changed, without reference to the guidelines, before child support can be modified. *E.g., Spilovoy v. Spilovoy,* 488 N.W.2d 873, 875

that Michael reimburse Nancy $3,595 for health care costs provided to the children; and ordered that Michael have visitation "on alternating holidays." Michael filed a request for review of the referee's findings and conclusions with the district court, and the court affirmed in all respects. Both Michael and Nancy have appealed from the amended divorce judgment.

Michael challenges the amount of his child support obligation determined by the referee. A determination of child support is a finding of fact reversible only upon a showing that it is clearly erroneous under Rule 52(a), N.D.R.Civ.P. *State of Minnesota, et al. v. Snell,* 493 N.W.2d 656, 657 (N.D.1992); *Clutter v. McIntosh,* 484 N.W.2d 846, 853 (N.D.1992). We will not set aside a finding as clearly erroneous unless, after reviewing the entire evidence, we are left with a definite and firm conviction that a mistake has been made. *Snell, supra; Sweeney v. Hoff,* 478 N.W.2d 9, 10 (N.D.1991).

■ Michael does not assert that, under the child support guidelines, the referee inaccurately calculated the net income derived from his farm, but contends that the referee erroneously failed to attribute any of that income to Danette in recognition of her contributions to the farming operation. According to Michael, because only an obligor owes a duty to support the children under § 75–02–04.1–01(7), N.D.Adm.Code, and because Danette is not an obligor, Danette's contributions had value as "in-kind income" of a spouse under § 75–02–04.1–08, N.D.Adm.Code, the amount of which should have been used to reduce Michael's net income for calculating his child support obligation. Even if we were to accept Michael's argument that the guideline's concept of in-kind income can be used to reduce an obligor's child support obligation [*compare Spilovoy v. Spilovoy,* 488

N.W.2d 873 (N.D.1992); *Clutter, supra* ], we are not left with a definite and firm conviction that the referee was mistaken in determining Michael's child support obligation.

The referee recognized that Danette is a full-time college student and found that while she "no doubt contributes time and effort to assist in the farming operation from time to time, the income generated from the business is primarily attributable to [Michael's] full-time efforts." We agree that Michael failed to establish what amount, if any, should be attributable to Danette's contributions. Danette was not paid any wages for her farm work. Michael testified that Danette attends college in Jamestown from September through May and is usually gone from 6 a.m. until 9 p.m. when school is in session. He also testified that there is less farm work for her to do during the mid-summer months and that he had to pay $2,000 for hired labor and custom combining in 1991 because Danette was in school. Michael's estimates of the amount of time Danette spent on farm work and her percentage contribution to the farm business vary widely and are speculative. On this record, we cannot say that the referee's decision to not attribute any income to Danette in order to reduce Michael's child support obligation is clearly erroneous.

Michael asserts that the referee's decision requiring that he reimburse Nancy $3,595 for health care costs she paid for their children is clearly erroneous. We disagree.

In awarding Nancy $3,595 for health care costs, the referee reasoned that Michael, "by his own admission has failed to comply" with the health insurance provision of the original divorce decree and that, as a result, Nancy "has incurred substantial expenses, including the payment of

(N.D.1992); *Sweeney v. Hoff,* 478 N.W.2d 9, 10 (N.D.1991); *Garbe v. Garbe,* 467 N.W.2d 740, 742 (N.D.1991). Effective October 1, 1993, the guidelines will apply to child support awards regardless of whether there is a material change of circumstances. *See* § 14–09–08.4(3), N.D.C.C., and note. Whether a material change of circumstances occurred in this case does not

appear to have been disputed. Michael argued below that his "child support payments be limited to $300.00 per month as set forth in [his] Proposed Findings." Because Michael does not challenge the lack of a finding of a material change of circumstances on appeal, we do not address this issue.

health insurance premiums and sums not covered by health insurance." The referee found that Nancy had documented $1,261.94 paid on behalf of Lea and $2,334.18 paid on behalf of Patrick for medical expenses not covered by Woolridge's family insurance policy, and that "this was only a partial record of the sums actually expended." The referee found that Michael had paid only $1,500 for the children's health care costs since the original divorce judgment was entered. The referee ordered that Michael reimburse Nancy for these documented amounts as a "way of compensating [Nancy] partially for [Michael's] failure to comply with the Judgment as to health insurance." The referee reasoned that:

"[R]equiring [Michael] to reimburse [Nancy] for that sum is fair and equitable in that the reasonable value of health insurance coverage since the entry of the original Judgment in this matter would far exceed that sum; that approximately 90 months have passed since the original Judgment; that if one could obtain health insurance coverage for the children at $100.00 per month, then [Michael] would be responsible for $9,000.00 for health insurance premiums alone."

■ Michael acknowledges that he did not comply with the health insurance provision of the divorce judgment, but contends that because the children were covered by Woolridge's health insurance policy, "[t]here was simply no rational reason for [me] to obtain an additional policy, at additional expense, to provide the same coverage." Relying on *Guthmiller v. Guthmiller*, 448 N.W.2d 643, 649 (N.D.1989), Michael also argues that the order to reimburse Nancy for past uncovered medical expenses of the children constitutes an impermissible retroactive modification of his support obligation. We reject these arguments for several reasons.

First, if Nancy's remarriage resulted in the original judgment requiring Michael to provide duplicative health insurance coverage, he should have sought a modification of the judgment rather than simply ignoring its requirement that he provide the

insurance because he believed there was "no rational reason" for doing so. Furthermore, even if Woolridge did provide health insurance coverage for the children at no additional cost, this does not constitute "a principled legal argument for shifting the burden from" Michael, the individual responsible for those costs under the divorce judgment. *Penuel v. Penuel*, 415 N.W.2d 497, 499 (N.D.1987). Moreover, although Michael assumes that Woolridge did not incur additional expenses by having the children covered under the family policy, there is no evidence in the record to support this assumption. Nancy testified that medical coverage for herself, Woolridge, Lea, and Patrick under the Burlington family plan costs them $214 every two weeks.

■ Michael treads on dangerous ground when he argues that the $3,595 reimbursement award constitutes an impermissible retroactive modification of his support obligation. Based on Nancy's testimony that her family medical coverage costs $214 every two weeks, the referee's estimate that the amount attributable to the children's coverage equals $100 per month is, we believe, somewhat conservative. As the referee noted, the reasonable value of health insurance coverage for the children that Michael did not provide in violation of the divorce judgment far exceeds the $3,595 reimbursement award. If an impermissible retroactive modification of Michael's support obligation occurred in this case, that error can just as easily be viewed as the referee's relieving Michael of his duty to pay in full the value of past insurance premiums for the children as it can the referee's adding an obligation to pay for past uncovered medical expenses. Under these unique circumstances, we do not believe Michael is in any position to complain about the $3,595 reimbursement award.

The referee attempted to fashion a remedy that partially compensates Nancy for Michael's years of ignoring the health insurance provision of the divorce judgment. Michael has failed to convince us that the referee's decision requiring that he reim-

burse Nancy $3,595 for the children's health care costs is clearly erroneous.

In her cross-appeal, Nancy asserts that the referee erred in granting Michael visitation with the children on alternate Memorial Day and Labor Day holidays. Because both holidays span only three days each and because Havre, Montana, is 563 miles from Carrington, Nancy contends that the "children's school performance and health would probably suffer" by "requiring the children to travel a total of 20 hours" over such short periods of time.

The referee was vested with substantial discretion in determining what custody and visitation arrangements are in the best interests of the children, and we will not reverse a decision on these matters simply because we may have viewed the evidence differently had we been the trier of fact. *Berg v. Berg,* 490 N.W.2d 487, 491 (N.D. 1992). There is no showing on the record that these visitation periods would be harmful to the children in any way. Lea and Patrick are now 10 and 13 years old, respectively. The order does not require that the children be transported to Carrington, and Michael contemplates exercising this visitation in conjunction with his vacations. We are not convinced that the referee erred in granting Michael visitation during the Memorial Day and Labor Day holidays. *See Pozarnsky v. Pozarnsky,* 494 N.W.2d 148, 150 (N.D.1992).

Nancy seeks $50 as a sanction for Michael's failure to serve a designation of the parts of the record he intended to include in the appendix as required by Rule 30(b), N.D.R.App.P., and for failing to reproduce in the appendix any of the 35 affidavits presented to the referee in conjunction with this case. Nancy seeks the sanction to defray the expense of providing copies of some of these documents as an addendum to her brief. We may award a cost sanction against a party who does not comply with the Rules of Appellate Procedure. *See Matter of Estate of Binder,* 366 N.W.2d 454, 458 (N.D.1985); *Matter of Estate of Raketti,* 340 N.W.2d 894, 897 (N.D. 1983). We grant Nancy's request for $50

as a sanction for Michael's noncompliance with Rule 30(b), N.D.R.App.P.

The amended judgment is affirmed.

VANDE WALLE, C.J., and LEVINE and MESCHKE, JJ., concur.

Justice J. PHILIP JOHNSON, who was a member of the Court when this case was heard, did not participate in this decision.

Justice NEUMANN and Justice SANDSTROM, not being members of the Court when this case was heard, did not participate in this decision.