STATE of North Dakota, County of Cass, ex rel., Dawn Renee YOUNGER, Plaintiff, Appellee and Cross–Appellant,

and

Charia Dawn Younger, a minor child, by and through her guardian, Bónnie Johnson, Plaintiff,

v.

Weldon BRYANT, Jr., Defendant, Appellant and Cross–Appellee.

Civ. No. 900212.

Supreme Court of North Dakota.

Jan. 16, 1991.

O'Neel Law Office, Fargo, for defendant, appellant and cross-appellee; Michael C. O'Neel (argued).

Mertz Law Office, Fargo, for plaintiff, appellee and cross-appellant; Monty G. Mertz (argued).

ERICKSTAD, Chief Justice.

Weldon Bryant, Jr., appeals from the Third Amended Judgment, dated April 5, 1990, issued by the District Court for the East Central Judicial District, asserting that the Court erred in finding a significant change in circumstances which warranted modification of Bryant's child support obligation and by failing to allocate the child tax exemptions in his favor. Dawn Younger cross-appeals, asserting that the court erred in not allocating the tax exemptions in her favor, by denying her motion to compel Bryant to pay the health insurance cost of the minor child, and by denying her costs and attorney's fees. We affirm in part, reverse in part, and remand.

On March 24, 1986, a judgment was entered establishing child support to be paid by Bryant in the sum of $175 per month commencing in April 1986. The original judgment also provided that the federal tax dependency exemption for the child would be allocated to both parties, alternating every other year. The judgment was amended on January 3, 1990, in order to correct a clerical error. On January 3, 1990, Younger moved to amend that judgment to secure an increase in child support, require Bryant to pay the health insurance and related costs of the minor child, and to gain the exclusive right to claim the minor child as a dependency exemption for federal income tax purposes.

On April 5, 1990, the district court entered judgment increasing Bryant's support obligation from $175 per month to $451. The district court found that a 5 percent increase in Bryant's income, rais-

ing Bryant's net monthly income to $1,803.71, coupled with a large disparity between the original obligation and the amount mandated by the child support guidelines constituted a "substantial [material] change in circumstances" which warranted the increase in support payments. All other parts of Younger's motion to amend were denied.

Bryant contends that the court erred in finding that the child support guidelines provide a basis for finding a material change in circumstances, and that the court erred in finding that a 5 percent increase in his salary constitutes such a change in circumstances. Younger cross-appeals, asserting that the district court erred in denying her request to compel Bryant to pay the health insurance premiums and other related costs of the minor child, and by failing to allocate to her the dependency exemption.

In response to the requirements imposed by the Omnibus Budget Reconciliation Act of 1987 and the Family Support Act of 1988, the North Dakota Legislature expanded the child support enforcement provisions of the North Dakota Century Code. Hearings on S.B. 2245 before the House Human Services and Veterans Affairs Committee were held on March 10, 1989 (testimony of Marcellus Hartze, Director of the Child Support Enforcement Agency for the North Dakota Department of Human Services). Included within these changes were provisions to establish a procedure for the periodic review of support orders. *See* N.D.C.C. §§ 14–09–08.4—14–09–08.9. The periodic review of support orders is to be implemented in a two-step process beginning with the development of a plan to review IV–D cases starting October 1, 1990. By October 1, 1993, all cases will be subject to the periodic review. N.D.C.C. § 14–09–08.4, note (1989).

Determination of whether or not the review procedures should apply is governed by a temporary new section of Chapter 14–09, N.D.C.C.[1]

The language of the temporary section clearly provides that the review process is limited to child support orders which are being enforced by the child support agency. *See* N.D.C.C. § 14–09–08.4, note (1989). This case was originally commenced by a child support agency, but amendment of the judgment under consideration on this appeal was secured through assistance of private counsel.

There may be constitutional concerns associated with applying the review procedures only to cases involving orders which are being enforced by a child support agency until October 1, 1993, when all cases will fall within the provisions for review. Under our current case law, we have required a party to show that there has been a material change in circumstances before a court may modify a child support award. *E.g., Gabel v. Gabel,* 434 N.W.2d 722 (N.D. 1989).

1. "Section 16 of chapter 148, S.L.1989, creates a temporary new section to chapter 14–09, effective October 1, 1990, through October 1, 1993, and after that date ineffective, to read as follows:
 *'Periodic review of child support orders.*
 1. The public authority shall establish standards to determine that a child support order *being enforced by the child support agency should be reviewed.* If required to do so in order to secure approval by federal officials charged with administration of title IV–D of the Social Security Act [Pub.L. 93–647; 88 Stat. 2351; 42 U.S.C. 651 et seq., as amended], the public authority shall make those standards a part of a plan indicating how and when child support orders are to be periodically reviewed and adjusted.
 2. If the child support agency determines, at the request of the obligor or the obligee, or on its own motion, that, pursuant to the standards described in subsection 1, *a child support order being enforced by the child support agency should be reviewed,* the child support agency shall initiate a review of such order and, if the order provides for child support payments in an amount less than eighty-five percent of the amount that would be required by child support guidelines established under subsection 1 of section 14–09–09.7, shall seek an amendment of the order. The court shall order the amendment of the child support order to conform the amount of child support payment to that required under the child support guidelines unless the presumption that the correct amount of child support would result from the application of the child support guidelines is rebutted.'" (Emphasis added).

The new provisions may or may not eliminate the requirement that a material change in circumstances be shown before modification of a support award is granted. *See* N.D.C.C. § 14–09–08.4, note (1989). At a minimum, the question will likely arise as to whether or not, until all cases fall within the periodic review provisions, those cases which are not within the provisions will need to carry the extra burden of showing that a substantial change in circumstances has occurred. This issue is not before us today and new issues cannot be considered for the first time on appeal. *E.g., Lynch v. Williston City Com'n,* 460 N.W.2d 136 (N.D.1990). Accordingly, as the constitutionality of the newly adopted review procedure was not raised below, we will not attempt to resolve it today.

 Our review of the district court's determination concerning child custody, child support, spousal support, and property division is governed by the clearly erroneous standard of review under Rule 52(a), N.D.R.Civ.P. *Reede v. Steen,* 461 N.W.2d 438, 440 (N.D.1990); *Gabel,* 434 N.W.2d at 723; *Lapp v. Lapp,* 293 N.W.2d 121, 124 (N.D.1980). The party asserting the error has the burden of demonstrating that the determinations are erroneous. *Gabel,* 434 N.W.2d at 723. A determination will be held to be clearly erroneous when the reviewing court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made. *Id.* However, we will not reverse the district court merely because we may have viewed the evidence differently. *Reede,* 461 N.W.2d at 440 (quoting *Larson v. Larson,* 234 N.W.2d 861, 865 (N.D.1975)).

 As we have previously indicated, a party seeking modification of child support payments must first show that the circumstances of the parties have materially changed. *Gabel,* 434 N.W.2d at 723; *Burrell v. Burrell,* 359 N.W.2d 381, 183 (N.D. 1985). Bryant asserts that the district court erred in finding that there had been a material change in circumstances between the parties. The district court based its determination on a 5 percent increase in Bryant's income over the last five years and the disparity between the amount of Bryant's current support payments and the amount of support suggested by the guidelines. Bryant contends that the district court erred by considering the amount of disparity between his current payments and what the guidelines would require in determining whether or not there has been a material change in circumstances. We agree that the disparity between Bryant's current payments and the guidelines cannot serve as a basis for finding a change in circumstances.

We have previously recognized that "[a] change of circumstances with reference to modification of child support payments is one based primarily on a change in financial circumstances." *Schmidt v. Schmidt,* 432 N.W.2d 860, 862 (N.D.1988); *Skoglund v. Skoglund,* 333 N.W.2d 795, 796 (N.D. 1983); *Corbin v. Corbin,* 288 N.W.2d 61 (N.D.1980); *Bridgeford v. Bridgeford,* 281 N.W.2d 583 (N.D.1979). While other factors may be considered in determining whether or not a change in circumstances has occurred, those other factors often take the form of financially-related evidence, such as the needs of the child and the cause of the change in financial circumstances. *See generally, Bloom v. Fyllesvold,* 420 N.W.2d 327, 331 (N.D.1988). A change in the child support guidelines does not directly effect either party, nor does it change the financial circumstances of either party.

In 1984, the Minnesota Court of Appeals said:

"The guidelines are inapplicable in a modification case unless the court first finds the substantial change of circumstances required for a modification order."

*State on Behalf of Johnson v. Howell,* 359 N.W.2d 629, 631 (Minn.App.1984). *Accord Hadrava v. Hadrava,* 357 N.W.2d 376, 379 (Minn.App.1984). Although the Minnesota Court of Appeals was not directly addressing the issue confronting us here, we do find its reasoning to be helpful in determining whether or not the adoption of the

guidelines should be considered to be a change in circumstances.[2]

■ In both North Dakota and Minnesota, there is a presumption against the retroactive application of a statute unless the legislature has clearly indicated such an intent. *Reiling v. Bhattacharyya*, 276 N.W.2d 237 (N.D.1979); *Viereck v. Peoples Sav. and Loan Assoc.*, 343 N.W.2d 30, 34 (Minn.1984). In *Hadrava*, the Minnesota Court of Appeals said: "we find no retroactive effect in an application of the guidelines to a modification order, *provided* the court first finds the substantial change in circumstances required for such an order." (Emphasis added.) *Hadrava*, 357 N.W.2d at 379. We agree. In this case for the additional reason that the guidelines were not adopted pursuant to the Administrative Agencies Practice Act, Chapter 28–32, N.D.C.C., it was improper to consider them as a material change in circumstances justifying a change in the child support payments.

See *Illies v. Illies*, 462 N.W.2d 878 (N.D. 1990).

■ Although it was error for the district court to consider the effect of the disparity between the guidelines and the original order in determining whether or not there was a material change in circumstances, we must still determine whether or not the district court's findings were clearly erroneous in finding a material change in circumstances from other circumstances. *E.g.*, *Gabel*, 434 N.W.2d at 723. The district court based its decision to modify partly on a 5 percent increase in Bryant's income over a period of five years. Bryant does not dispute that he has had an increase in income. Younger filed an affidavit indicating that her child care costs have risen and that her current expenses exceed her income. Her monthly net income is $892.95, compared to Bryant's net monthly income of $1,803.71. Bryant elected not to cross-examine Younger on her affidavit.[3]

2. The guidelines have been legislatively enacted in Minnesota. See Minn.Stat.Ann. § 518.551.

3. The affidavit of Younger reads as follows:

"Dawn Renee Younger being first duly sworn on oath, states and alleges as follows:

1. I am the Plaintiff in the above-entitled action and I am making this Affidavit in support of my Motion to amend the Judgment and Decree in this action.

2. I am the mother of Charia Dawn Younger, born November 6th, 1985, and I have the sole care, custody, and control of her.

3. On information and belief, the Defendant, Weldon Bryant, Jr., has had a significant increase in income since the entry of the Judgment and Decree in this action on March 24th, 1986. He had take-home pay in the sum of at least $1,600.00 per month at the time of the entry of the original Judgment and Decree in this action. He is gainfully employed by the Fargo Clinic Merit Care at the main facility as a maxillofacial technician. He has been employed in this position for a substantial period of time and I have every reason to believe that his income has increased since the entry of the Judgment and Decree in this action.

4. A further substantial change in circumstances is that my expenses as the custodial parent of Charia Dawn Younger have substantially increased since the entry of the original Judgment and Decree in this action. Significantly, child care costs have increased, and as Charia gets older clothing and other expenses related to her care have increased.

5. The child support provided for in the Judgment in this action is currently $175.00 per month. Since the entry of the original Judgment, the child support guidelines have changed dramatically, and the child support guidelines would provide that if Weldon Bryant, Jr., is making $1,600.00 a month in take-home pay, his child support obligation for one child would be at least 25 percent of $1,600.00, or $400.00 per month. As I am currently receiving only $175.00 per month in child support, there is a huge disparity between the current guidelines amount and the amount that I am receiving.

6. The original Judgment and Decree in this action failed to provide for the payment of medical costs or medical insurance for Charia. It is an unreasonable burden on me to be required to bear all of the costs associated with medical insurance and medical care for Charia. I have every reason to believe the [sic] Weldon Bryant, Jr., receives medical insurance coverage through his employer and would be able to cover Charia at little or no cost to him.

7. The original Judgment and Decree in this action entered on March 25th, 1986, failed to specifically provide as to which party could claim the dependency exemption under income tax returns as a parent of Charia. It is my understanding that there was a Stipulation entered into in this case that did purport to provide that the Defendant Weldon Bryant, Jr., would be entitled to claim Charia as a dependent on his federal and state income tax returns every other year. This provision of the Stipulation was not incorporated into the Judgment. I believe this was an error. How-

We have previously recognized that an increase in the cost of living is a factor which may be considered in the district court's findings that a material change in circumstances has occurred. *See generally, Freyer v. Freyer,* 427 N.W.2d 348 (N.D. 1988). In addition to the obligor's financial position, we must also consider the needs of the children and dependent spouse in determining whether or not there has been a change in circumstances. *Skoglund v. Skoglund,* 333 N.W.2d 795, 796 (N.D.1983) (citing *Corbin v. Corbin,* 288 N.W.2d 61 (N.D.1980)). In light of the district court's finding that Bryant's income had increased to a net monthly income of $1,803.71, coupled with the unchallenged affidavit which indicates that there has been an increase in child care costs and Younger's expenses are exceeding her income, we are not left with a definite and firm conviction that a mistake was made in the district court's finding that a material change in circumstances had occurred. *See Freyer,* 427 N.W.2d at 348. That, however, does not end our inquiry.

We must now consider whether or not the child support award which was increased from $175 per month in March 1986, to $451 per month in April 1990 was clearly erroneous, as we will not set aside a trial court finding on this issue unless it is clearly erroneous. Rule 52(a), N.D.R. Civ.P. *Reede,* 461 N.W.2d at 440. As the district court was apparently functioning with the view that the guidelines were mandatory unless rebutted pursuant to section 16 of Chapter 148 S.L.1989, we must reverse the judgment as to the amount and remand this case to the district court for a redetermination of the amount of child support.

■ The district court declined to modify the allocation of the child dependency exemption which currently alternates between the two parents. Both parties argue on appeal that they should each receive annually the entire dependency exemption.

ever, based on the change in circumstance since the entry of the original Judgment, I believe that I should be entitled to claim the child as a dependent on my income tax returns each and every year."

We have previously determined that the district court may allocate income tax dependency exemptions. *Illies,* 462 N.W.2d at 882; *McKenzie v. Jahnke,* 432 N.W.2d 556, 557 (N.D.1988); *Fleck v. Fleck,* 427 N.W.2d 355, 359 (N.D.1988). As we have recently recognized, "[a]lthough it may be prudent to place the exemptions in the hands of the party who will most benefit, perhaps with a reciprocal reduction in the other party's support obligation, we have not previously required the trial court's to do so." *Illies,* 462 N.W.2d at 882. Considering that the court has substantially increased Bryant's support payments, we do not believe it was error to grant the exemption to Bryant in the manner it did. However, if the court on remand substantially reduces Bryant's support payments, this issue could again be considered. As for now, we are not left with a definite and firm conviction that the district court erred in not modifying the allocation of the dependency exemption.

■ Younger contends on her cross-appeal that the district court erred in not awarding her costs and attorney's fees. An award of attorney's fees is a matter of discretion to be determined by the district court which will only be reversed where there is a showing that the district court abused that discretion. *Koch v. Williams,* 456 N.W.2d 299 (N.D.1990); *Routledge v. Routledge,* 377 N.W.2d 542, 547 (N.D. 1985); *Gooselaw v. Gooselaw,* 320 N.W.2d 490 (N.D.1982). An abuse of discretion exists where the district court acts in an arbitrary, unreasonable, or unconscionable manner. *Routledge,* 377 N.W.2d at 547. Under the circumstances as they now exist, we do not find that the district court abused its discretion in not awarding Younger costs and attorney's fees. Should the district court on remand reduce Bryant's monthly child support obligation substantially, this issue may be reconsidered.

Younger's net income of $892.95 was set forth in a second affidavit which itemized her monthly income and expenses. Neither affidavit was ever challenged by Bryant.

■ Younger further contends in her cross-appeal that the district court erred by not imposing the cost for health insurance premiums of the child upon Bryant. The record on appeal contains very little evidence concerning the health insurance issue. During oral argument, Younger conceded that insufficient evidence had been provided. In light of the minimal evidence presented, we conclude that the district court's findings on this issue are not clearly erroneous.

For reasons stated in the opinion, we affirm in part, reverse in part, and remand the case to the district court for further evidentiary hearing to determine the amount of the child support payments, and for such other remedial action that any change in the amount of the award for child support may require.

LEVINE, Justice, concurring specially.

I agree that this case should be remanded for a redetermination of the amount of child support because we cannot be sure that the trial court actually exercised its discretion in setting the amount of child support rather than relying exclusively on the improperly promulgated guidelines. Having said that, I believe that one of the reasons we have legislative "guidelines" is because of the perception that judge-made child support awards have been disparate and inadequate. *See* Lenore J. Weitzman, *The Divorce Revolution*, 321 (1985) (ch. 9 "Child Support: The National Disgrace").

The guidelines which we ruled invalid in *Illies v. Illies*, 462 N.W.2d 878 (N.D.1990), nonetheless represent a view, some would say the enlightened view, about a reasonable scale for child support. The invalidation of these guidelines because of their imperfect promulgation should not send the wrong message to trial courts. The mere fact that there is no guideline mandating the payment of $451.00 a month in child support does not preclude the trial court from determining on remand that $451.00 a month in child support is fair and reasonable if supported by the evidence presented, viewing that evidence in a light most favorable to the child's needs, considering the actual present costs of raising a child. Obviously, the financial status of each parent weighs heavily in the equation but any doubt should be resolved in favor of the child. That is the least the courts should do. Perhaps the change in emphasis that I am espousing will improve the data underlying the conclusion drawn by Weitzman that "when income is compared to needs, divorced men experience an average 42 percent rise in their standard of living in the first year after the divorce, while divorced women (and their children) experience a 73 percent decline." Weitzman, *supra* at 323.

MESCHKE, J., joined.

VANDE WALLE, Justice, concurring and dissenting.

I agree that this matter should be remanded to the trial court because a five percent increase in Bryant's income is not alone a sufficient change of circumstances to justify modification and because the trial court was mistaken in relying upon the child-support guidelines.

The other factors which the majority opinion "finds" to be material changes in circumstances were not relied upon by the trial court nor did the trial court make findings concerning whether or not they were material changes in circumstances. Those findings are appropriate for the trial court, not the appellate court. I therefore dissent to that portion of the opinion which engages in that fact-finding process. I would remand the entire matter to the trial court to consider anew the question of whether or not a material change in circumstances has occurred. If the trial court determines that a material change of circumstances has occurred, without consideration of the child-support guidelines, only then should it proceed to modify the amount of child-support payments.

GIERKE, J., joined.